The next matter, No. 25-1192, Premca Extra Income Fund LP v. iRobot Corporation et al. At this time, would the Council for the Appellant please come to the podium and introduce themselves on the record to begin? Good morning, Your Honors. May it please the Court, Christopher Turek on behalf of the Appellant, Premca Extra Income Fund LP. I'd like to respectfully request three minutes for rebuttal. You may. Thank you very much. Plaintiff's complaint alleges false and misleading statements backed by both witnesses and news articles about a critical merger between Amazon and iRobot. Defendants concealed from investors that Amazon was refusing to cooperate with regulators, that Amazon had actually terminated integration meetings between the two companies that had been going on for over a year prior, and that, subsequently, iRobot had begun planning for the merger's abandonment. The published merger agreement outlines that both parties would use best efforts to help the merger succeed and that, critically, both parties would supply as promptly as reasonably practicable any additional information and documentary material requested by regulators. iRobot knew that Amazon was not doing that, but they concealed that from investors. Now, the crux of this case, which undergird the allegations of the complaint, are the accounts of the plaintiff's confidential witnesses and the news articles. Respectfully, the District Court erred in holding that the confidential witnesses and the news articles were not sufficiently particularized to support plaintiff's allegations. Counsel, there were a number of different statements that you alleged were either false or misleading, and I'm wondering if you want to focus us in on a handful or two or three that you think are strongest for your case, because opposing counsel has argued in their brief that, you know, a number of the statements, either because, for instance, they don't talk about the European Commission at all or the timeline doesn't quite support the claims that you're making, that they fall out, essentially. And so if we're going to do a statement-by-statement analysis, which we often need to do, are there particular statements that you would want us to look at especially closely as being either false or misleading? Yes, Your Honor. So with respect to – so there's two types of statements, obviously, that the complaint focuses on, the non-cooperation statements and the status update statements. With respect to the non-cooperation statements, I think the August 24th proxy statement, it's found on paragraph 130 of the complaint where iRobot says specifically, iRobot and Amazon.com continue to work cooperatively with the FTC staff in its review of the merger. Additionally, in the June 16th Reuters article, defendant Angle stated, and this is on paragraph 106 of the complaint, both companies are continuing to work cooperatively with other relevant regulators in their review of the merger. Also – So can I ask you then, in terms of the August 24th statement that you just mentioned, that talks about the FTC, but I thought really the thrust of your arguments were about non-cooperation with the EC, and so again, I think your opposing counsel says that the statements that focus on the FTC don't support your claims. So how do you respond? Well, respectfully, the FTC statements are false and misleading because if you look at and attribute the Politico news article that was put out in March of 2023, it expressly states that Amazon was refusing to cooperate with regulators at the FTC about – about information about its search algorithm and how it's working due to concerns about competition. So – I'm sorry, counsel. My misunderstanding – I thought your argument was really focusing on non-cooperation with the European Commission. Isn't that correct? It's with both, Your Honor. Mostly with respect to the CW2 and CW3, they establish that defendants Engel and Zeller were specifically told that Amazon was refusing to cooperate with requests from the EC about its search algorithm. So with respect to statements like the June 16th statement about companies continuing to work cooperatively with regulators, that would apply to both the FTC and the EC. But – Counsel, so I have the August 24th proxy statement, at least the pertinent passages in front of And I have a slightly different focus, although it does go to whether just the FTC or also the EC. Although we expect that all applicable regulatory approvals will be obtained, the merger can't be consummated until certain approvals outside of the U.S. and inside the U.S. All right. As I understand it, this was the very first time that iRobot actually made a statement. And we expect that all applicable regulator approvals will be obtained. Now mind you, there is the usual precatory language that has been there from the very beginning, but I thought it a little odd, given your version of the sequence of events, that they choose in August of 23 for the very first time to actually offer a prediction on what's going to happen. We expect the regulatory approvals will be obtained. Now, your opponent says, oh, that was just a safe harbor, forward-looking statement. Judge Young said, well, gee, since I've ruled against the plaintiffs on plausibility grounds and on syander grounds, I don't have to reach this question. So focusing on this and focusing on whether this is a protected statement under the safe harbor, what is your argument on that? Yes, Your Honor. So with respect to that statement, it's not protected by the safe harbor. The statement is referring to the defendant's present picture of the status of the merger, that it's expectations about the merger actually succeeding. And at that same time, defendants knew that Amazon was refusing to cooperate with regulators and that Amazon had begun terminating the integration meetings between the two companies. Now, all of that would have changed the total mix of what an investor would take away from this statement. I thought they also knew that the regulators had advanced this, especially the EC, to further stages of investigation. What did they know about that as of August 24th, 2023? Yes, Your Honor. As you point out, they also knew that the EC had moved the investigation to its second stage, which I believe, as we outlined in our complaint, only occurred with 2% of all potential mergers that the EC had reviewed. And it's true they got specific information about what the EC was concerned about, right? In the July 6th press release by the EC, the EC laid out the problems that they saw? They laid out some of the problems. The EC also communicated privately with Amazon, which, pursuant to the merger agreement and as affirmed by the CWs, defendants knew about that they were specific concerns about privacy and competition specifically related to the search algorithm of Amazon and how that would impact privacy and competition. So I guess that goes to my question. Did the algorithm problem, the algorithm resistance by Amazon, in your view, take on more significance after the July 6th press release? Yes. The algorithm problem persisted and did take on more significance. We know that it persisted because the CW3 affirmed that in late summer, defendants again were informed, pursuant to the merger agreement, that Amazon was still refusing to cooperate with regulators' requests. So it became a consistent problem. And then that also led into Amazon itself beginning to sour on the merger, beginning to terminate integration meetings. Counsel, can I just, again, I'm trying to make sure we really understand the timeline for every specific statement. So we're looking at the August 24th statement right now. There is an allegation about a subsequent team leading in late summer, but we don't know what the date of that is based on the complaint. And late summer actually could be September, correct? I mean, summer officially doesn't end until later this month, as far as I know. And then you mentioned the integration meetings ending, and please, I'm sure you know the complaint better than I do. But I thought that by August, there was only an allegation that one stream of meetings had potentially ended, not multiple streams of integration meetings. Am I wrong about that? So, yes, Your Honor. So with respect to the timing of the CW3's senior team leadership meeting with defendants, that occurred in late July, early August. The reason why- It said late summer. Yes, Your Honor. It didn't say late July, early August in the complaint, does it? In the- it says late summer, and apologies for the ambiguity there. Well, but we have to go based on what's not- Understood. You can't testify in this proceeding, counsel, unfortunately. No, understood, Your Honor. So it does say, and pursuant to how it's laid out in the complaint, it was right after the defendant's July statement. But with respect to the termination of the integration meetings, yes, they started to terminate the integration meetings in the early August of 2023, and then continued to terminate all integration meetings by October. I guess I'm asking you a more specific question. What does your complaint very specifically say about what integration meetings had been terminated as of August 24th? I understood it was just one stream. Correct, Your Honor. Can you point me to where in the complaint the allegation is? I'm sorry? Could you just point me to where in the complaint the allegation is and what it said? I believe that, I'd have to get the specific paragraph, but it does say that the real estate integration stream had been canceled, and that was just the first of the many streams that ultimately were canceled. So- But as of August 24th, that's what I'm trying to figure out. It was just the real estate integration stream that had been canceled based on your memory of the complaint? Yes, Your Honor. And I take it the significance of that is it was a sign that Amazon was beginning to doubt whether the regulatory approvals would be given, especially after the EC public statements on July 6th and the private statements. And that is the background against which, for the first time, they say, oh, we expect where we, the companies, expect that we are going to get the regulatory approvals. Correct, Your Honor. So that started to demonstrate that the merger was on shaky ground, that Amazon itself believed the merger was on shaky ground. And indeed, this court held just last month that in State Teachers v. Charles River, where a broad statement, while in possession of information that would have changed the total mix of what an investor would take away, that's a material omission here. Any investor who would have read the proxy statement and said, okay, well, iRobot believes that they're going to gain all regulatory approval and this merger is going to go through, well, they would have changed that view had they known that Amazon itself was starting to change its tune and starting to terminate integration meetings between the companies. So I take it that not only are you saying that this was a, it wasn't an omission, it was a misstatement, but thereafter, they did not repeat that they expected regulatory approval, but neither did they say we are no longer so confident that we are going to get regulatory approval, and that is an omission. Correct, Your Honor. And to your point, I would simply point the court towards the January 10th Politico article in its paragraph 150 of the complaint, where Defendant Engel did say, we remain excited about the opportunity to work together with Amazon.com. So they did, later on in the class period, just three weeks before the merger was terminated or was abandoned, they did continue to mislead investors about the likelihood of success by omitting key facts that ultimately would have changed any investor's view of how to value iRobot. So when I look at November of, November 27, there's a discussion of the objections from the EC. There's no, the August statement isn't walked back, and by that point, there are, I understand it more, facts of the shutdown of integration. So even though you can't say in that November thing, oh, that's the false statement, is your position that that statement, in light of the August statement, needed to be more fulsome in explaining what the current situation was, other than to say there's a statement of objections to which the companies will be able to respond? Yes, Your Honor. So by November of 2023, not only was Amazon refusing to cooperate, not only had Amazon begun to, and by that point, terminated all integration meetings between the two companies, but iRobot itself began planning for the merger's abandonment. So they themselves began to think that this merger might not go through. So at that point, they needed to be more fulsome in light of the past misstatements. So what do you make of it? On the other side, I think it's going to say, look, this is normal business activity. We hope, we believe, that's all true, but of course, we'd be fools not to take steps in case it doesn't happen. And so that's what we were doing. It's not false. We did believe it was going to happen. So basically, I guess what I'm asking is, what makes the statement sort of, how do we, the plausibility aspect of this, in the sense that this is a heightened pleading requirement, the statute requires sort of proof or, you know, specific statements that tend towards this was a dishonest omission, as opposed to our business, you know, something that normally would happen in business. How do we, how do we make sense of that, where you don't really have the smoking gun? You're missing that. Yes, Your Honor. But as the Supreme Court tells us in teleps, we don't need a smoking gun. And I think to your point and your question, taking a step back and looking at the holistic, a holistic view of the complaint, the timeline of events with Amazon's refusal to cooperate, then Amazon's full termination of the integration meetings. And then over a year after the merger agreement had been agreed to, iRobot then began for the first time to plan for the merger's abandonment. That is, respectfully, the timeline of events supports the idea that there's, that this was a new event. And defendants' personal beliefs, subjective beliefs, as the Ninth Circuit held in Glaser v. Forescout, in that case, the defendants also argued that, that they subjectively still believed that the merger would succeed. And the Ninth Circuit there said, well, irrespective of whether or not the merger was, you believe that the merger would still succeed, the fact is, is that an event occurred that changed the total mix of information. So at that point, you had an obligation. So is the key though to that, that there were like signs from the regulators that things were in trouble? Because when they say to me, which I think they're going to, this was normal business activity. You can only integrate so much, then it's too much and that causes other problems, so we have to stop. And then they're going to say that, you know, you should plan for something going south, we'd be irresponsible not to. Is the thing that makes it take on a cast of dishonesty, that there were regulatory things that they knew about that suggested things were going sideways, in other words, how do we distinguish, this is just what you do in business, which I don't think would need to be disclosed, to this is something that had to be disclosed? Well, I think the regulatory part is a part and parcel of it. But I also believe that, respectfully, an event that occurs after the merger partner had terminated all integration meetings, an event that occurred for the first time, and this wasn't, okay, well, let's plan for the merger's abandonment, just in case, right at the start. This was over a year after the merger was agreed to, as regulatory scrutiny was increasing, as Amazon was souring on the merger, as Amazon was refusing to cooperate with regulator requests about its search algorithm. So looking at it in total, the plausibility that they just decided as a normal course of business to start planning for the merger's abandonment after all of those events took place, respectfully, the most plausible inference in this case is that defendants started to realize that Amazon might not be all in on this merger, that regulators might not be all in on this merger, and that they themselves needed to plan for the merger's abandonment, and investors deserved the opportunity to know about that when defendants were telling investors about the status of the merger. Thank you, counsel. Thank you very much. At this time, would counsel for the appellees please introduce yourself on the record to begin? Good morning. Alicia Nanda for iRobot, Colin Engel, and Julie Zehler. May it please the Court, the record shows that iRobot timely updated and warned investors that the merger was being subjected to increasing levels of regulatory scrutiny by the EC and the FTC, and that it may not receive approval, and that it may not be completed at all. And on appeal, plaintiff has abandoned their challenge to those robust warnings, and that's in their opening brief at Note 3. And now they focus largely on this theory that Amazon, not iRobot, but Amazon was not working cooperatively with the EC and the FTC in their reviews, and that iRobot knew it at all times. I'd like to very carefully go through the challenge statements, because I think that's what you need to do in terms of looking at what the allegations are and what can be drawn in terms of a reasonable inference from the well-pled facts at the time that the statements were made. So I'll start with the EC review, because that's where my brother has focused quite a lot in terms of his confidential witnesses, and then I'll move to the FTC and I'll speak to integration and contingency planning. So with respect to the EC review, plaintiff challenges two statements that refer to Amazon working cooperatively with the EC in its merger review process. That is a June 16th Reuters article quoting Mr. Engel. There's the July 25th 8K. Both of these statements were made after the EC launched its phase one review of the merger on June 1st, and they largely rely on two things. One, there's an FT article, a Financial Times article. That is from early on in February, and it merely says that the EC sent Amazon questions that indicated that they were gearing up for a formal probe. It doesn't say anything about Amazon's responses to those questions. So it really is that they're focused on their two CWs, two and three. And so there's been a lot of characterization, and the district court sometimes calls it a spin, but I think when you look at what the complaint says about their accounts at a May meeting and a late summer meeting, they don't support a reasonable inference that at the time those statements were made in June and July, that they were knowingly false when made. And this is for a number of reasons. First was something hinted at today, and it's a basic timing problem. Even if you were to credit the CW's accounts so far as they go, as they're listed in the complaint, that as of a May meeting, iRobot learned that Amazon hadn't provided some information requested by the EC in the past. iRobot never spoke to investors about Amazon's cooperation with the EC until after the EC initiated its formal review. And it's just not reasonable to infer from this May meeting that iRobot's later statements about the process in June and July were false. And you have a similar timing problem with CW3. They say, well, CW3 says that in a late summer meeting, iRobot learned that the EC had again asked for information about the search engine, and Amazon had refused. But that was after the June and July statements, so it makes no sense to assume that iRobot knew of information in June and July when it had allegedly learned in late summer. And there are a couple other problems with this as well. I mean, to get around the pleading deficiency, plaintiff speculates that Amazon was not working cooperatively with the EC throughout this whole period, and that iRobot would have known about it because of a merger agreement that contemplated that Amazon would provide iRobot with regulatory updates. But they point to no actual communications between Amazon and iRobot, and that doesn't work to plead securities fraud. There's also a mismatch issue, which is well briefed, I think, so I'll just touch on it, which is, again, even if you credit the CW so far as they go, just because Amazon didn't give some information to the EC at certain points in time doesn't mean that it wasn't working cooperatively with the EC in the course of its review. It's routine for parties to negotiate over the scope and nature of information requested. That's supported by the FTC's own second request guidelines, and it also comports with the  The complaint alleges in paragraph 133 that the EC suspended its phase two review on August 29th so that it could obtain additional information, and that the EC ultimately gained the requested information and that the clock was restarted on October 20th. And then the complaint goes on in paragraph 144 to say that the EC issued its preliminary objections to the merger on November 27th, and the EC's own words are, the commission has conducted a wide-ranging investigation to understand the market and the potential impact of the deal. This investigation has included, among others, analyzing internal documents provided by the  There's nothing to suggest that the EC didn't get the information it needed to conduct the review and to come to its preliminary concerns about the merger. And frankly, nowhere in that list of stated objections does it say anything about not being able to complete its review because of information not being available. So, there are also some specificity problems with these allegations and reliability problems, but for the most part, I think it's the timing problem and the mismatch problem. Counsel, if I could focus you on some other filings which you've chosen not to address. Your brief at page 6 says that the iRobots proxy statement on September 7th, 2022, says there is no way to predict how long the process of regulatory approval will take to obtain the required regulatory approvals or whether such approvals will ultimately be obtained. And that sort of precautionary language gets stated over and over again. Why then in August, August 24th, for the first time, did the company say we, the companies, expect that we will get the regulatory approvals? Having said earlier, there's no way to know. And then it may be subjectively it had that expectation all along, but it doesn't say that to the investing public until August. And then it never withdraws that statement. And so, this was the subject of much of the questioning of your opponent. And you've chosen not to address it. Could you please address it? Absolutely. I would like to address that. So, in September of 2022, the FTC review was just beginning. The EC review had not even begun. The UK CMA's review, that's the other regulatory body that was reviewing this merger for antitrust concerns, had not begun its review. So, it was very early in the process. By August of 2023, the only antitrust regulator who had completed their review and come to a conclusion on it was the UK CMA, who had reviewed it from April to June. And in June, unconditionally approved the merger. So, those are things that... As I understood it, the EC had moved this to a stage two investigation. And that was a cause for concern because only 2% of investigations are moved to that stage. And the EC... So, the EC is a different regulatory body and the EC... Yes, but you needed its approval. Absolutely. And so, the EC moving to phase two was disclosed to investors in the August 8th disclosure and in the same August 24th disclosure. And I'd also like to say that these disclosures were very clear. Although we expect that all applicable regulatory approvals will be obtained, the merger cannot be consummated without the expiration and approvals of certain regulatory authorities. It also says, although...  But it's true. It is true. The first time... Why, if the EC has moved you to stage two, which I think would have caused you to lose confidence in approval, do you, for the first time, say, we expect that the approvals will happen? Because we didn't believe that it violated any antitrust laws because the EC stated in its public press release with respect to the EC moving it to stage two, and that's in the record, that moving it to stage two did not prejudge their decision on the case. But the disclosure of the phase two was also included in the total mix of information that was provided to investors. And I do think that having a UK regulator review and approve, unconditionally, the merger at this time does stand to reason that that information, plus others... Then why did these statements say, based on the UK approval, which is not the same as the EC and FTC approvals, we now expect all three agencies will give us approvals? That was their expectation, couched with... Yes, but that's not what the statement... The statement is not limited to the UK approval. No, but there is nothing to suggest at this point in time that IROBOT didn't expect approvals in the other jurisdictions as well. And they were not hiding anything from the investors at this time, but had told the investors about the phase two. Is this the first statement made after... When exactly did the UK provide the approval? You said... Yes, it was in June. And I have that here in a timeline. June 16th. Sorry, yeah. And so is this the first time that they speak publicly about their expectation after the UK approval? About their expectation in terms of... About whether, ultimately, they'll get... This language, in terms of what their expectations is, which is couched in cautionary language in both sections, including that IROBOT cannot assure that these regulatory clearances and approvals will be timely obtained, obtained at all, or that granting of these regulatory clearances and approvals will not involve the imposition of additional conditions.  Yes. So this statement, this is the first... It was not made in the... As Judge Lynch correctly stated, it wasn't made in this way in the earlier proxy statement from September of 2022. It was made in August after the CMA approved it and after the EC moved to phase two. But was this the first statement they made after that approval came in? That's actually what I'm asking. Was there something else in July? With respect to the merger? With respect to their expectation about the merger? Yes. Okay.  Next, I just want to touch on two items, if I could. One is the FTC. There are a number of statements that they've tried to challenge on the ground, cooperation statements regarding the FTC. Those are from May, June, July, and August. And again, the only factual allegation they have challenging Amazon's cooperation with the FTC is a single sentence from a March Politico article. That's from an unnamed source that says Amazon has been largely unresponsive to the FTC's investigation so far, refusing to turn over information requested by the FTC, some of the people have said. Can you focus on my question about November 27th when you announced the objections? Yes. So it strikes me that by that point, the objections are not a good thing. Do you acknowledge that? That's not good for the merger. It's not dispositive. But it does seem that by that point, not only did we go from a stage two investigation, now we have objections. When you look at the press releases, the problems identified are the same. And as I understand it, in that time, there are things that IROBOT becomes aware of that suggests that Amazon may be less interested in this coming to pass in terms of stopping integration meetings, and then they take up going to try to figure out what are we going to do if we don't merge. As the situation gets less rosy, nothing really changes other than announcing the objectives and saying we think we can still win. That's all that's really said. But the situation on the ground seems to be darkening, and there's nothing here about that. Well, I do think that they issued an 8K with respect to that November 27th statement of objections. The statement of objections does list objections, or at least the press release does, objections, substantive objections with respect to the merger. And those were all disclosed. If there were objections, and you do state that. I acknowledge that's stated. And at the same time, there's internal noise between the parties that this thing is not looking good. Doesn't that have to be disclosed? So to allege fraud, though, you need the who, what, when, where. And there's no actual well-plaid facts about what this noise is. There's only an allegation that two work streams of integration meetings stopped, and it doesn't say why. The confidential witnesses don't say why. They say that all of them ended in October. Again, that confidential witness is not really alleged with much particularity to understand how he would know that. So just so I get your argument, it's not a problem. It's a problem of pleading and lack of information. But if that was as sort of we've been talking about it, do you think it would need to have been disclosed? I think that in the total mix of information that's provided here, that there is nothing to suggest that iRobot needed to disclose more than it had, which is the objection that the EC had issued objections. The EC was going to hold a hearing, was going to allow Amazon to potentially explain away some of their concerns. Even as of January, I think it was 10th or 11th, the EC stated, you know, we're still determining what we're going to do here. We can either approve it unconditionally or we can impose conditions or do something else, and we're still considering that. So until there is something to disclose, they did not have an obligation to disclose anything after the disclosure that was made on November 27th. And there's nothing nefarious about integration meetings stopping, particularly when there's a pleading deficiency about why those stopped. And the contingency planning, all the same, makes no sense. Because contingency planning for the eventuality that a merger may not go through, it's not planning for abandonment, as they say. No CW says that. They just say they started to contingency plan. Well, that's wholly consistent with the risk disclosures that were made to investors throughout the period and certainly in August. And so I don't think there's anything inconsistent or nefarious about the fact that they were contingency planning at that stage. Judge Lynch, any further questions? No, thank you. Thank you very much, counsel. Thank you very much. And for the reasons stated in our briefs and today on the record, I'd like to affirm the ruling of the district court who faithfully applied the precedents of this court. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record? He has a three-minute rebuttal. Thank you very much. Christopher Turek on behalf of PREMCA Extra Income Fund, LP, the appellant. I want to just touch on a few points. First and foremost, I know Your Honor, Judge Reichelman had asked for the specific paragraphs for, I would just point the court towards paragraphs 116 to 119 of the complaint. I know that in the argument of defendants, the argument was made that, well, there was some sort of cooperation. There was no evidence that this wasn't fully cooperating. We make the argument in our briefs that, as held in Aldridge v. A.T. Cross Corp., if a defendant wants to have a narrower definition of cooperation, they are under the obligation to use it. But we don't need to get that far. We only need to look at the merger agreement itself, because the merger agreement states what cooperation is. The merger agreement says that both parties should supply as promptly, as reasonably practicable, any additional information and documentary material. So cooperation is defined by defendants themselves. And this was published for investors to look at. So when defendants were then telling investors that Amazon was cooperating with regulators, there was already a definition of what cooperation was. It was providing any additional requested information. Amazon wasn't doing that. That is a materially misleading statement, as this Court has held in cases like Shosh v. Biogen. So I would also just point the Court towards defendants made the argument that Amazon, just because the defendants found out in May of 2023 that Amazon wasn't cooperating, there's no evidence that Amazon wasn't cooperating in the interim. I would point the Court towards Employee Systems v. Blanford decided in the Second Circuit, which essentially held that a defendant's practice at one point in time, it's a reasonable inference to assume that that practice continued, especially here, where that practice was bookended by two separate meetings that defendants attended, where they were informed that Amazon was refusing to cooperate. So respectfully, that is, again, indicative that this practice continued consistently. And I would also point the Court towards August, I believe it's paragraph 133 of the complaint, in August 29th, where the EC had actually suspended its review because it wasn't getting any information. Again, with respect to their statements after the August 24th statement, where they said that they expected all regulatory approvals to be obtained and that they were working cooperatively, that flies in the face of that. And so their November statement was materially misleading by omission. So for all of these reasons, I respectfully request that the Court overturn the District Court's ruling and return this action to the District Court for further proceedings. Thank you. Thank you. That concludes argument in this case.